IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| LORINDA BROWN, | ) | CASE NO. 4:09-CV-03088 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | BRIEF IN SUPPORT |
| | ) | OF MOTION TO DISMISS |
| GRANDMOTHER'S, INC., a Nebraska | ) | |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## INTRODUCTION

Without warning, or the courtesy of a demand letter, plaintiff, Lorinda Brown, a tester, filed this suit against Grandmother's, Inc., as well as six similar lawsuits against other Nebraska businesses commonly alleging violations of the public accommodation section of the Americans with Disabilities Act ("ADA").  With respect to Grandmother's, plaintiff alleges eighteen specific violations of the Department of Justice Accessibility Guidelines ("Accessibility Guidelines"), including such things as the height of parking space signs being too low, the absence of rear grab bars in the women's restroom, the side grab bar being too short, the coat hook being too high, and other alleged violations, many of which are trivial and have been corrected.  (Filing  No.  1 ¶ 18; Sweet Aff. ¶ 5).  In fact, plaintiff has admitted that many of the alleged barriers asserted in the Complaint are now in compliance with the Accessibility Guidelines.  (Plaintiff's Response to Defendant's First Request for Admissions Nos. 2, 6, 7, 9, 12-17).  Further, because Grandmother's restaurant was constructed in 1984, before the ADA was passed in 1990, and because the restaurant has not been altered or modified since its construction, Grandmother's is only required to remove barriers if removal is readily achievable. (Filing  No.  1 ¶ 18; Sweet Aff. ¶ 4).

Grandmother's has corrected all of the alleged barriers, except the three that are not readily achievable:

a. <u>Slope of Exterior Ramps</u>.  Grandmother's has not corrected the slope of the exterior ramps leading into the restaurant or installed handrails on both sides of the ramp because the corrections are not readily achievable due to structural constraints.  However, Grandmother's has used alternate methods to make its facility accessible by mounting a handrail along the building, which runs the length of the entrance ramp, and installing a button that customers in wheelchairs can press if they need assistance getting up the ramp.

b. <u>Women's Restroom</u>.  It is not readily achievable for Grandmother's to correct the remaining two alleged barriers in the women's restroom by increasing the size of the women's restroom or providing an accessible stall because both corrections would require serious structural changes to the building, cause the removal of available seating and selling space, and if the number of fixtures are reduced from three to two, violate the Lincoln Plumbing Code.  (Siemens Aff. ¶ 3; Table 4-1 of the Uniform Plumbing Code). Further, if Grandmother's remodels the restrooms, it will have to come into compliance with the current Lincoln Plumbing Code, which now requires four stalls.  Because Grandmother's currently has only three stalls, it would have to add an additional stall which would require the walls to be moved out even further into the selling space.

On July 16, 2009, the Court issued an Order and Memorandum which directed Grandmother's to file a motion addressing whether the case should be dismissed for lack of standing and deferred all discovery except as relevant to standing.  (Filing  No. 28).  The Court expressed concerns regarding whether it had subject matter jurisdiction to decide the case based

on possible problems with standing and mootness.  On August 4, 2009, plaintiff conducted a site inspection of Grandmother's pursuant to Federal Rule of Civil Procedure 34.  Grandmother's voluntarily agreed to the inspection.

On September 25, 2009, plaintiff served an amended response to Grandmother's Second Set of Interrogatories.  When asked how far she traveled to get to Grandmother's, plaintiff stated:

> It is approximately 102 miles from my house.  I travel with my son, almost every weekend during his baseball season all over the State of Nebraska and I am always looking for accessible restaurants to dine at.

(Plaintiff Lorinda Brown's Amended Response to Second Set of Interrogatories No. 3).  Further, plaintiff admitted that, despite her many allegations regarding barriers located in the interior of Grandmother's, she has never actually been inside Grandmother's restaurant:

> During the week of October 22, 2008, I attempted to patronize Grandmother's Restaurant, and due to an exterior ramp to the restaurant entrance, I was unable to enter the premises.  In addition, while I was seated in a vehicle with my Assistant, my other companion, my undersigned counsel's Legal Assistant, Randi McGrady-Kramer also discovered that the Women' restroom toilet stalls that are so narrow that women in wheelchairs cannot enter them or use them.

(Plaintiff Lorinda Brown's Amended Response to Second Set of Interrogatories No. 2). However, plaintiff admits that Randi McGrady-Kramer does not use a wheelchair.  (Plaintiff's Response to Defendant's First Request for Admissions No. 29).  To the best of Grandmother's knowledge, plaintiff has not returned to the restaurant since her single alleged visit during the week of October 22, 2008.  (Sweet Aff. ¶ 6).

Clearly, the Court lacks subject matter jurisdiction necessary to entertain this suit.  First, plaintiff does not have standing to assert her claims.  She has failed to show that she suffered an injury in fact and that her injury would be redressed by a favorable outcome.  Plaintiff has admitted that she has never eaten at Grandmother's or even been inside Grandmother's

restaurant, including its interior lobby, dining room, bar area, or women's restroom. (Plaintiff's Response to Defendant's First Request for Admissions Nos. 20-25). Further, plaintiff's claims are moot as to the alleged barriers that Grandmother's has removed. As for the remaining three barriers, their removal is not readily achievable. Thus, Grandmother's is not required to correct them, and as such, plaintiff has failed to state a claim upon which relief can be granted.

## ARGUMENT

### I.

**BECAUSE PLAINTIFF LACKS STANDING TO ASSERT HER CLAIMS, THE COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR THIS CASE.**

The plaintiff's standing to sue "is the threshold question of every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 502, 95 S.Ct. 2197 (1975). "In essence, the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Id.* at 498, 95 S.Ct. at 2205. Article III standing "is measured at the time the complaint is filed." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130 (1992). To have Article III standing, a plaintiff must show an (1) injury-in-fact (2) a causal relationship between the injury and challenged conduct, and (3) that the injury is likely redressed by a favorable decision. *Id.* at 560-561, 112 S.Ct. at 2136 . Only the first and last elements of standing are at issue in this case.

#### A.    Injury in Fact

Injury-in-fact is a harm that is "(a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560-561, 112 S.Ct. at 2136. To establish injury in fact, plaintiff must show that she sustained or is immediately in danger of sustaining a direct injury as a result of the challenged conduct and that the injury or threat of injury is real and immediate. *Id.* The injury-in-fact element is determined by the facts in existence at the time the

plaintiff files suit. *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 170, 120 S.Ct. 693 (U.S. 2000). "Although a single act of past discrimination may be sufficient to establish standing to bring an action under the ADA, plaintiffs who seek *injunctive relief* must demonstrate they face a real and immediate threat of future harm." *Parr v. L&L Drive-Inn Restaurant*, 96 F.Supp.2d 1065, 1079 (Dis. HI. 2000) (emphasis added). A plaintiff who is threatened with harm in the future because of existing or imminently threatened non-compliance with the ADA suffers imminent injury. *Pickern v. Holiday Quality Foods Inc.,* 293 F.3d 1133, 1138 (9th Cir. 2002). The plaintiff "must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers.... Intent to return to the place of injury 'some day' is insufficient." *Steger v. Franco,* 228 F.3d 889, 892-893 (8th Cir. 2000).

In some cases, "ADA plaintiffs who seek prospective injunctive relief when they allege only past discrimination that is unlikely to be repeated have been denied constitutional standing." *Parr*, 96 F.Supp.2d at 1079. In *Steger*, three of the plaintiffs failed to present evidence regarding their knowledge of the building's barriers or their likelihood to visit the building in the imminent future. Thus, the court concluded none of them had suffered an injury sufficient to confer standing. 228 F.3d at 893.

Further, the party seeking review must be among the injured. *Id*. at 894. A plaintiff only has standing to seek relief for any ADA violations affecting his or her specific disability. *Id.* For example, a blind plaintiff is not among the injured with regard to ADA violations that do not affect the blind. In *Steger*, the court held that granting a blind man standing to seek relief on behalf of all disabled individuals would expand the standing doctrine beyond the limits of Article III. *Id.*

In evaluating whether a plaintiff has established a likelihood of future injury, "courts are guided by: (1) the proximity of the place of public accommodation to the plaintiff's residence (2) the plaintiff's past patronage of defendant's business (3) the definitiveness of the plaintiff's plans to return and (4) the plaintiff's frequency of travel near the defendant." *Molski v. Kahn Winery*, 405 F.Supp.2d. 1160, 1163 (C. D. Cal. 2005).

Generally, "as the distance between a plaintiff's residence and a public accommodation increases, the likelihood of future harm decreases. Where the distance between the two is significant, especially over 100 miles, courts have often held that the distance weighs against finding a reasonable likelihood of future harm." *Id*. at 1163-1164. Here, plaintiff lives 102 miles from Grandmother's restaurant and has not returned to the restaurant since her single visit the week of October 22, 2008. (Sweet Aff. ¶ 6). (Response to Interrogatory No. 3). In *Molski*, where the plaintiff's residence was 104 miles from the defendant's winery, the court found the distance weighed against a likelihood of future harm. *Id*. at 1164. Likewise, in *Delil v. El Torito Restaurants*, the court held that the plaintiff failed to demonstrate a real and immediate threat of future harm because the plaintiff lived over 100 miles from the restaurant and she did not attempt to visit the restaurant since the incident of discrimination or allege that she planned to return. 1997 WL 714866 (N. D. Cal. 1997). Similarly, in *Brother v. Tiger Partner, LLC,* where the plaintiff lived more than 280 miles from the defendant's hotel, only traveled to the area twice a year, and had not attempted to return to the hotel since the time of the alleged violations, the court found that the plaintiff's arrangements to return to the hotel were speculative at best, which failed to evidence a credible threat of future injury. 331 F.Supp2d 1373 (M.D. Fl. 2004).

Where a plaintiff lacks concrete plans to return, the court must satisfy itself that a plaintiff's professed intent to return is sincere and supported by the facts. *Parr,* 96 F.Supp.2d at

1079-1080.   In *Parr*, the court held that when a plaintiff has visited a restaurant only once, the lack of history of past patronage "negates the possibility of future injury at [that] particular location." *Id.* at 1079.   Here, plaintiff visited Grandmother's only once.   Further, courts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return. *Brother,* 331 F.Supp2d at 1374-1375.   Within two months, Brown filed seven cases: four in Grand Island, one in Lincoln, and two in Omaha (Case Nos. 4:2009cv03042; 4:2009cv03044; 4:2009cv03060; 4:2009cv03066; 4:2009cv03081; 4:2009cv03086; 4:2009cv03088).

In the present case, plaintiff has failed to establish standing, and thus, the court does not have subject matter jurisdiction to decide this case.   As discussed above, the Eighth Circuit has held that a plaintiff "must at least prove knowledge of the barriers and that they would visit the building in the imminent future but for those barriers." *Steger,* 228 F.3d at 892-893.   As was the case with three of the plaintiffs in *Steger*, plaintiff does not have actual knowledge of the alleged barriers inside Grandmother's because she never entered, or even made a reasonable attempt to enter, the restaurant.   Despite being accompanied by her attendant, Dawn, and Randi McGrady-Kramer, Mr. Nitz's Legal Assistant, plaintiff claims that she was unable to enter the restaurant because she could not make it up the front ramp.   Instead of having one of her companions push her up the ramp, plaintiff remained outside and sent Ms. McGrady-Kramer, who does not use a wheelchair and is an employee of her attorney, into Grandmother's for her.   (Plaintiff's Response to Defendant's First Request for Admissions Nos. 29-32).   Plaintiff has admitted that she has never eaten at Grandmother's or even been inside Grandmother's restaurant, including its interior lobby, dining room, bar area, or women's restroom.   (Plaintiff's Response to Defendant's First Request for Admissions Nos. 20-25).   Nor has she returned to the restaurant since her visit over a year ago.   (Sweet Aff. ¶ 6).   Because plaintiff did not enter the restaurant, she does not

have knowledge of the alleged barriers inside Grandmothers, and thus, cannot establish standing.[1]

Further, all four of the factors used to analyze the future injury requirement of standing weigh against a finding of likelihood of future harm. First, the proximity of Grandmother's restaurant from plaintiff's residence does not support a finding of future harm. In her response to Interrogatory No. 3 plaintiff stated that she lives 102 miles from Grandmother's restaurant. As discussed above, when a plaintiff lives over 100 miles from defendant's business, courts have held that the distance "weighed against a likelihood of future harm." *Molski*, 405 F.Supp.2d at 1164. Second, plaintiff's past patronage of Grandmother's clearly weighs against a finding of future harm. The only time plaintiff has ever been to Grandmother's was on October 22, 2008, and even then she did not actually enter the restaurant. When a plaintiff has visited a restaurant only once, the lack of history of past patronage "negates the possibility of future injury at [that] particular location." *Parr*, 96 F.Supp.2d. at 1079.

Third, the definiteness of plaintiff's plans to return weigh against a finding of future harm. Plaintiff's statement that she is "always looking for accessible restaurants to dine" is not enough to establish definite plans to return. As noted above, "intent to return to the place of injury 'some day' is insufficient" to establish standing. *Steger*, 228 F.3d at 892-893. Finally, plaintiff has not established that she is frequently in the proximity of Grandmother's restaurant. Plaintiff's statement that she travels with her son almost every weekend "all over the State of Nebraska" does not mean that she is frequently near Grandmother's. (Response to Interrogatory No. 3).

---

[1] Moreover, Ms. McGrady-Kramer's alleged encounter of barriers in Grandmother's does not establish standing because she is not confined to a wheelchair, and thus, cannot testify for persons in wheelchairs (*Steger*, 228 F.3d at 893). The same is true of plaintiff's expert, Steve Mason. Moreover, Ms. McGrady-Kramer is an employee of counsel of record.

Additionally, courts have found that a serial plaintiff's extensive litigation history can undercut a professed intent to return. *Brother,* 331 F.Supp2d at 1374-1375. In addition to the claim against Grandmother's, Plaintiff has filed six similar lawsuits against other Nebraska businesses in Grand Island, Lincoln, and Omaha all alleging violations of the ADA. Thus, plaintiff's litigation history should be considered in determining whether the plaintiff genuinely plans to return to Grandmother's. Because plaintiff has not met the injury in fact requirement of standing, the court does not have subject matter jurisdiction to decide this case.

### B.   Redressability

For an injury to be redressable, "judicial action must be likely to remedy the harm and cannot be merely speculative." *Steger,* at 893 (quoting *Lujan,* 504 U.S. at 560, 112 S.Ct. 2130). To avoid abuse, "federal courts must be diligent in observing standing requirements. And, particularly in view of a recognized trend of abusive ADA litigation, special diligence and vigilant examination of the standing requirements are necessary and appropriate to ensure the litigation serves the purposes for which the ADA was enacted." *Harris v. Stonecrest Care Auto Center, LLC*, 472 F.Supp.2d 1208, 1215 (S.D.Cal.,2007) (citing *Molski v. Arby's Huntington Beach,* 359 F.Supp.2d 938, 941 (C.D.Cal.2005) (expressing the court's concern that plaintiff's "ADA claims in that case may be a sham, used as a pretext to gain access to the federal courts while pursuing state law remedies")).

In *Harris,* the court held that "a plaintiff's contact with a local establishment made solely for the purpose of bringing a claim under the ADA, without more, is insufficient to confer Article III standing to seek injunctive relief because it fails to meet the redressability requirement." *Id.* at 1217-1218. The following is the court's reasoning for its decision:

> A plaintiff who visits a local business solely in order to bring a Title III claim (to which supplemental state claims may be joined) fails to meet the redressability

requirement for Article III standing. *See Lujan,* 504 U.S. at 561, 112 S.Ct. 2130 ("[I]t must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."). Where litigation is the only reason for a plaintiff's visit to a particular local establishment, once litigation is complete it is unlikely such a plaintiff will return to avail himself of the business' goods or services, or to visit the local business for any other reason. Any permanent injunction obtained in the course of litigation might benefit others, but it would not benefit the plaintiff. In other words, any injury the plaintiff suffered would not likely be redressed by a favorable decision. By contrast, where a plaintiff's interests in patronizing or visiting the establishment extend beyond the end of litigation, injunctive relief may redress the plaintiff's injury.

*Id*.

As discussed above, in addition to the claim against Grandmother's, plaintiff has filed six lawsuits against other Nebraska businesses all alleging similar violations of the ADA. Given plaintiff's litigation history, her alleged plans to return to Grandmother's appear disingenuous, and thus, her alleged injury is not redressable. Because plaintiff has not met the redressability requirement of standing, the court does not have subject matter jurisdiction to hear this case.

## II.

### PLAINTIFF'S CLAIMS RELATED TO THE ALLEGED BARRIERS THAT GRANDMOTHER'S HAS REMOVED ARE MOOT. THUS, THE COURT LACKS SUBJECT MATTER JURISDICTION TO HEAR THOSE CLAIMS.

Mootness is a jurisdictional defect that can be raised at any time by the parties or the court sua sponte. *Barilla v. Ervin*, 886 F.2d 1514, 1519 (9th Cir. 1989). Mootness deprives the court of its ability to take remedial action because there is nothing to remedy. *Sharp v. Rosa Mexicano, D.D., LLC,* 496 F.Supp2d 93, 98 (D.D.C. 2007) (quoting *Spencer v. Kemna*, 523 U.S. 1, 18 (1998). "An issue is moot when actions subsequent to the commencement of a lawsuit create an environment in which the Court can no longer give meaningful relief." *Brother v. CPL Investments, Inc.,* 317 F.Supp.2d 1358, 1372 (S.D. Fl. 2004). "Because the only relief available under the ADA is injunctive relief, if the alleged barrier is removed, the issue becomes moot."

*Hubbard v. 7-Eleven, Inc.* 433 F.Supp2d 1134, 1145 (S.D. Cal. 2006).

"When injunctive relief is requested and events have transpired that the controversy has ended and there is no remedy for the court to impose, a controversy is moot unless one of the exceptions applies." *Sharp,* 496 F.Supp2d. at 98.   One exception to mootness is voluntary cessation.   Generally, "a defendant's voluntary cessation of a challenged practice does not deprive the court of its power to determine the legality of the practice. If it did, the courts would be compelled to leave the defendant… free to return to his old ways." *Friends of the Earth, Inc*., at 189, 120 S.Ct. at 708 (quoting *City of Mesquite v. Aladdin's Castle, Inc.,* 445 U.S. 283, 289, 102 S.Ct. 1070, 1075.   However, "a court may nonetheless conclude that voluntary cessation has rendered a case moot if (1) there is no reasonable expectation that the alleged violation will recur,… and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Sharp,* 496 F.Supp2d. at 99 (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631, 99 S.Ct. 1379 (1979)).   The burden of proving the behavior will not recur is on the party asserting mootness.  *Id.*

In, *Sharp,* the plaintiff alleged that a sink in the men's restroom of a Mexican restaurant contained several barriers in violation of the ADA.   However, the parties agreed that after initiation of the suit, the sink was brought into compliance with the ADA.   The court held that the defendant's voluntary cessation of the challenged practice made the case moot because, "[t]he alleged discrimination cannot reasonably be expected to recur because structural modifications are unlikely to be altered in the future." *Id*. at 99.   Likewise, in *Brother*, several plaintiffs asserted claims against a Ramada hotel alleging numerous violations of the ADA. However, the court held that the claims were moot because after being sued the Ramada corrected all the alleged barriers for which the plaintiffs had standing to sue:

The evidence establishes that upon notification of the Plaintiff's complaints, which came in the form of the instant suit, the hotel has made modifications which remedy the alleged barriers, to the extent that such barriers ever existed and to the extent Plaintiffs have standing to allege their complaints. … Consequently, Plaintiff's claims are moot, and injunctive relief is inappropriate.

*Brother,* at 1373.

In the present case, plaintiff alleges eighteen specific violations of the Accessibility Guidelines, most of which either do not violate the ADA or have been removed.  (Filing No. 1 ¶ 18; Sweet Aff. ¶ 5).  Grandmothers has taken the following corrective action to remove the alleged barriers:

General Alleged Barriers:

1.   Allegation: The accessible parking spaces are located on an improper slope.

> Correction: The parking lot has been regraded, repaved, and restriped so that the slope of the accessible parking stalls ranges from 0% to 2%, which does not exceed 1:50 (2%), as required by the ADA.  (Accessibility Guidelines § 4.6.3).  Further, the ADA requires parking lots with 76 to 100 total stalls to have a minimum of 4 accessible parking stalls. Grandmother's has 94 total stalls, four of which are handicapped parking stalls.  (Accessibility Guidelines § 4.1.2).  No further modifications are required.

> Grandmother's is willing to add one additional handicap stall on the south side parking lot adjacent to the two existing stalls (regardless of existing grade or slope) in the Spring of 2010 after the parking lot is restriped. This will increase the total accessible spaces to five, one more than is required by the ADA.  The north side accessible spaces will remain. Additional signage will be added on the north side stating "Additional Handicap Spaces on the South Side".

2.   Allegation: The accessible signage at the parking spaces are too low.

> Correction: Signage was modified so that the bottom of the signs are 60" above grade.  These signs sit above a 4" curb and a greenscape slope with a height of 6"-8".  Thus, the signs cannot be obscured by a vehicle parked in the space, as required by the ADA.  No further modifications are required. (Accessibility Guidelines § 4.6.4).

> Admission: Plaintiff admits that the accessible signage at the parking spaces complies with the Accessibility Guidelines.  (Plaintiff's Response to Defendant's

First Request for Admissions No. 2)

3.   <u>Allegation</u>: The ramp at the entrance door is too steep and lacks proper handrails.

> <u>Not Readily Achievable</u>:  The ADA allows for ramps to have a maximum rise of 30" over a horizontal projection of 30'.  Although Grandmother's meets the slope requirement, the exterior ramps are 38' and 48', which exceed the 30' run limitation (Accessibility Guidelines § 4.1.6(3)(a)). Thus, the ADA requires the installation of a switchback with a landing of 60" by 60" (Accessibility Guidelines § 4.8.4).  Such a landing is technically infeasible to install at Grandmother's because of structural columns that would be in the way.  Further, the ADA provides that if a ramp has a rise of greater than 6" or has a horizontal projection greater than 72", then it shall have handrails on both sides.  (Accessibility Guidelines § 4.8.5).  Grandmothers has attached a handrail to the building, which runs the length of the entrance ramp.  However, it is technically infeasible to install a handrail on the other side of the ramp because of structural limitations.

> Although removal of this barrier is not readily achievable, alternative methods have been used to make the restaurant accessible.  A button was installed at the base of the ramp that customers in wheelchairs can press if they need assistance getting up the ramp.

4.   <u>Allegation</u>: The entrance doors-in-series are too heavy.

> <u>Correction</u>: The interior set of doors at the entrance were removed.  No further modifications are necessary.

5.   <u>Allegation</u>: There are an insufficient number of accessible seating positions at the facility.

> <u>No Correction Needed</u>: The restaurant has two seating areas: dining room and bar.  Both areas utilize a combination of fixed (booth) type seating and free-standing tables.  The free-standing tables have knee space of at least 28" high.  The tables are 30" x 48" with a center support post (with a 3" diameter) located in the middle of the table.  Thus, patrons seated at the end of the table have 30" of width and 22 ½" of depth.  Further, there are six (out of 35) tables in the dining room with these dimensions and five (out of 25) tables in the bar with these dimensions, which is more than the ADA's requirement that 5% of tables be accessible.  The dimensions of these tables meet the ADA's requirement that tables be at least 27" high, 30" wide, and 19" deep, thus no modifications are required.  (Accessibility Guidelines §§ 4.1.3(18); 4.32.3; 4.32.4).

> <u>Admission</u>: Plaintiff has admitted that the number of accessible seating positions at the facility complies with the Accessibility Guidelines.

(Plaintiff's Response to Defendant's First Request for Admissions No. 6)

<u>Alleged Barriers in Women's Restroom</u>:

6.   <u>Allegation</u>: The entrance door is too heavy.

> <u>Correction</u>: Steps have been taken to reduce the weight of the entrance door to 5 pounds which is permitted by the ADA.   Thus, no further modifications are necessary.   (Accessibility Guidelines § 4.13.11).

<u>Admission</u>: Plaintiff admits that the entrance door of the women's restroom complies with the Accessibility Guidelines.   (Plaintiff's Response to Defendant's First Request for Admissions No. 7)

7.   <u>Allegation</u>: There is insufficient maneuvering clearance at the entry/exit door.

> <u>No Correction Needed</u>: The entry/exit door to the women's restroom is located at the end of a hallway, which is 68 ¼" long and 42" wide (front approach).   These dimensions meet the requirements of Figure 4(e) of the ADA, which requires a width of 36".   Further, there is more than 48" of clearance on the latch side of the pull side of the door, which satisfies the requirements of the ADA which calls for 18" minimum clearance. Because the restroom door has only a closer and not a latch, an additional 12" of clearance on the latch side of the push side of the door is not required by the ADA.   Thus no modifications are required. (Accessibility Guidelines §§ 4.2.4.2 and 4.13.6).

8.   <u>Allegation</u>: There is improper accessible signage at the door.

> <u>Correction</u>: Accessible signage was installed on the door.   The sign is posted with its top edge at 60" above the finished floor.   The signage now meets the ADA requirement that the sign be 60" above the finish floor, thus no further modifications are necessary. (Accessibility Guidelines § 4.30.6).

<u>Admission</u>: Plaintiff admits that the accessible signage at the door of the women's restroom complies with the Accessibility Guidelines.   (Plaintiff's Response to Defendant's First Request for Admissions No. 9)

9.   <u>Allegation</u>: There is no accessible toilet stall provided.

> <u>Not Readily Achievable</u>: Correction of this barrier would require serious structural changes to the building, cause the removal of available seating and selling space, and if the number of fixtures are reduced from three to two, violate the Lincoln Plumbing Code.   (Table 4-1 of the Uniform Plumbing Code).   Moreover, if Grandmother's remodels the restrooms, it will have to comply with the current Lincoln Plumbing Code, which now

requires four stalls. Because Grandmother's currently has only three stalls, an additional stall would have to be added as part of any remodel, which would be costly and require the walls of the restroom to be moved out, reducing the available seating and selling space.

10. <u>Allegation</u>: There is insufficient maneuvering clearance in the toilet room.

> <u>Not Readily Achievable</u>: To provide more room for maneuverability in the restroom, Grandmother's would have to make the entire restroom bigger, which would be costly, require serious structural changes to the building, cause the removal of available seating and selling space, and if the number of fixtures are reduced from three to two, violate the Lincoln Plumbing Code. (Table 4-1 of the Uniform Plumbing Code). Moreover, if Grandmother's remodels the restrooms, it will have to comply with the current Lincoln Plumbing Code, which now requires four stalls. Because Grandmother's currently has only three stalls, an additional stall would have to be added as part of any remodel, which would be costly and require the walls of the restroom to be moved out, reducing the available seating and selling space.

11. <u>Allegation</u>: There are no rear grab bars provided.

> <u>Correction</u>: A 36" long rear grab bar was installed 36" above the finished floor. The rear grab bar now meets the ADA requirement that the bar be 36" long and between 33" and 36" above the floor, thus no further modifications are necessary. (Accessibility Guidelines § 4.17.6; § 4.26).

<u>Admission</u>: Plaintiff admits that there are rear grab bars provided in the women's restroom. (Plaintiff's Response to Defendant's First Request for Admissions No. 12)

12. <u>Allegation</u>: The flush valve is on the inside of the water closet.

> <u>No Correction Needed</u>: The flush valve is mounted on the front face of the toilet, which is the widest side of the toilet. The flush valve is mounted 29 ¾" above the floor. This positioning meets the ADA requirement that the flush valve shall be mounted on the wide side of toilet area no more than 44" above the floor, thus no modifications are required. (Accessibility Guidelines § 4.16.5).

<u>Admission</u>: Plaintiff admits that the flush valve on the inside of the women's water closet complies with the Accessibility Guidelines. (Plaintiff's Response to Defendant's First Request for Admissions No. 13)

13. <u>Allegation</u>: The pipes under the lavatory are not properly insulated.

> <u>Correction</u>: The exposed supply and drain pipes under the lavatories have

been insulated. The pipes now meet the ADA requirement that hot water and drain pipes under lavatories be insulated or otherwise configured to protect against contact. Thus no further modifications are necessary. (Accessibility Guidelines § 4.19.4).

Admission: Plaintiff admits that the insulation for the pipes under the women's restroom lavatory complies with the Accessibility Guidelines. (Plaintiff's Response to Defendant's First Request for Admissions No. 14)

14.   Allegation: The side grab bar is too short.

No Correction Needed: Both side grab bars are 42" long. This length meets the requirements of the ADA that side grab bars be 42" long, thus no modifications are required. (Accessibility Guidelines § 4.17.6; § 4.26).

Admission: Plaintiff admits that the side grab bars in the women's restroom comply with the Accessibility Guidelines. (Plaintiff's Response to Defendant's First Request for Admissions No. 15)

15.   Allegation: The coat hook is too high.

Correction: The coat hook was relocated so that the bottom of the coat hook is 47 ½" from the finished floor. The coat hook now meets the ADA requirement that the maximum high forward reach allowed shall be 48", thus no further modifications are necessary. (Accessibility Guidelines § 4.2.5; § 4.27.3).

Admission: Plaintiff admits that the coat hook in the women's restroom complies with the Accessibility Guidelines. (Plaintiff's Response to Defendant's First Request for Admissions No. 16)

16.   Allegation: The hardware on the lavatory requires twisting and/or grasping to operate.

Correction: ADA compliant faucets were installed, thus no further modifications are necessary. (Accessibility Guidelines § 4.19.5).

Admission: Plaintiff admits that the hardware on the women's restroom lavatory complies with the Accessibility Guidelines. (Plaintiff's Response to Defendant's First Request for Admissions No. 17)

17.   Allegation: The soap dispenser is out of reach.

No Correction Needed: The soap dispenser is mounted so that the activation pad is accessible with a forward reach of 18". Further, it is mounted at 42 ¾" above the finished floor. This height meets the ADA requirements that a forward reach of less than 20" can have a high reach limit of up to 48". Thus no modifications are required. (Accessibility

Guidelines § 4.22.3).

18.   <u>Allegation</u>: The paper towel dispenser is out of range.

> <u>Correction</u>: The paper towel dispenser is available via a parallel (side) approach.  The dispenser has been relocated so that the pull handle is 51 ½" above the finished floor.  The paper towel dispenser now meets the ADA requirement that the maximum high side reach be no more than 54", thus no further modifications are necessary.  (Accessibility Guidelines § 4.2.6).

(See Filing  No. 1 ¶ 18; Sweet Aff. ¶ 5).

Because the only relief in this case is injunctive, plaintiff's claims are moot as to the barriers voluntarily removed by Grandmother's.  The fifteen barriers that Grandmother's removed are not likely to recur because, as discussed above, "structural modifications are unlikely to be altered in the future." *Sharp*, 496 F.Supp2d. at 99.  As such, this Court lacks subject matter jurisdiction to hear the fifteen claims related to the barriers that have been removed by Grandmother's.

**III.**

**BECAUSE REMOVAL OF THE REMAINING THREE BARRIERS IS NOT READILY ACHIEVABLE, GRANDMOTHER'S IS NOT REQUIRED TO CORRECT THEM, AND THUS, PLAINTIFF HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.**

Three alleged violations remain: the slope of the exterior ramps and improper handrails, the amount of maneuvering room in the women's restroom, and the absence of an accessible stall.  However, because Grandmother's restaurant was constructed in 1984, before the ADA was passed in 1990, and because the restaurant has not been altered or modified since its construction, Grandmother's is only required to remove barriers that are readily achievable.  42 U.S.C. §§ 12183(a)(2) and 12182(b)(2)(A)(iv).  The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense."  42 U.S.C. § 12181(9).  Although Title III does not define the term "difficulty", it states that the "readily

achievable" determination should take into account "the impact ... upon the operation of the facility," 42 U.S.C. § 12181(9)(B).  For example, "the rearrangement of temporary or movable structures, such as furniture, equipment, and display racks is not readily achievable to the extent that it results in a significant loss of selling or serving space."  ADA Regulation for Title III § 36.304(f).  The Title III Technical Assistance Manual provides the following example:

> CDE convenience store determines that it would be inexpensive to remove shelves to provide access to wheelchair users throughout the store. However, this change would result in a significant loss of selling space that would have an adverse effect on its business. In this case, the removal of the shelves is not readily achievable and, thus, is not required by the ADA.

*Id.* at 33-34.

If removal of a barrier is not "readily achievable," a public accommodation must make its facilities available through "alternative methods if such methods are readily achievable."  42 U.S.C. § 12182(b)(2)(A)(v).  Examples of alternatives to barrier removal include, but are not limited to, the following actions: (1) Providing curb service or home delivery; (2) Retrieving merchandise from inaccessible shelves or racks; and (3) Relocating activities to accessible locations.  ADA Regulation for Title III § 36.305(b).  In *Hubbard,* convenience store patrons, who required the use of wheelchairs, filed a claim against a convenience store alleging several violations of the ADA. 433 F.Supp2d at 1134.  One of the plaintiffs' complaints was that several items of merchandise were too high for the plaintiffs to reach.  433 F.Supp2d at 1148.  The defendant argued that it exercised alternatives to barrier removal by creating a policy for assisting disabled customers and by installing an ADA compliant sign which stated, "If you require any assistance, please notify one of our friendly team members."  The court held that "signs such as the one posted by the Defendant constitute a reasonable modification under the ADA."  *Id.* at 1148.

Grandmother's has not corrected the slope of the exterior ramps leading into the

restaurant or installed proper handrails because the corrections are not readily achievable due to structural constraints.  The ADA allows for ramps to have a maximum rise of 30" over a horizontal run of 30'.  Although Grandmother's meets the slope requirement, the exterior ramps of the restaurant are 38' and 48', which exceeds the 30' run limitation (Accessibility Guidelines § 4.1.6.(3)(a).  Because the ramp is over 30' long, the ADA requires the installation of a switchback with a landing of 60" by 60" (Accessibility Guidelines § 4.8.4).  However, such a landing is technically infeasible at Grandmother's because structural columns would be in the way.  Further, the ADA provides that if a ramp has a rise of greater than 6" or has a horizontal projection greater than 72", then it shall have handrails on both sides.  (Accessibility Guidelines § 4.8.5).  In an effort to increase accessibility, Grandmothers has attached a handrail to the building, which runs the length of the entrance ramp.  However, it is technically infeasible to install a handrail on the other side of the ramp because of structural limitations.  However, Grandmother's has used alternative methods to make it's facility accessible by installing a button that customers in wheelchairs can press if they need assistance getting up the ramp.  Like the defendant in *Hubbard*, Grandmother's will assist customers that experience problems with accessibility.

Further, it is not readily achievable for Grandmother's to increase the size of the women's restroom or provide an accessible stall because it would require serious structural changes to the building, cause the removal of available seating and selling space, and if the number of fixtures are reduced from three to two, violate the Lincoln Plumbing Code.  (Siemens Aff. ¶ 3; Table 4-1 of the Uniform Plumbing Code).  Moreover, if Grandmother's remodels the restrooms, it will have to comply with the current Lincoln Plumbing Code, which now requires four stalls.  Because Grandmother's currently has only three stalls, an additional stall would have

to be added as part of any remodel, which would be costly and require the walls of the restroom to be moved out, reducing the available seating and selling space.

Because removal of the remaining three barriers discussed above is not readily achievable, Grandmother's is not required to remove the barriers.  Further, Grandmother's has voluntarily used alternative methods to correct the barriers where readily achievable.  Because Grandmother's is not required to remove these remaining three barriers, the plaintiff has failed to state a claim upon which relief can be granted.

## CONCLUSION

Based upon the foregoing, the court should dismiss plaintiff's Complaint with prejudice, at plaintiff's cost, and award defendant such other relief as the court deems just and equitable.


GRANDMOTHER'S, INC., Defendant

By:   /s/ Valerie S. Retelsdorf
      Valerie S. Retelsdorf #24187
      Harvey B. Cooper, #15035
      Abrahams, Kaslow & Cassman LLP
      8712 West Dodge Road, Suite 300
      Omaha, NE  68114
      Telephone:  (402) 392-1250
      Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 4, 2009, I electronically filed foregoing Brief in Support of Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which sent electronic notification of such filing to the following:

Marvin L. Andersen at <u>marvin@bradleylawoffice.com</u>

Michael P. Kneale at <u>mike@bradleylawoffice.com</u>

Stephan M. Nitz at <u>snitz@szalaw.com</u>

 s/Valerie S. Retelsdorf
 Valerie S. Retelsdorf, #24187
