UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA


LORINDA BROWN,                                    CASE NO.: 4:09-cv-03088-WKU

                Plaintiff,

vs.

GRANDMOTHER'S, INC., a
Nebraska corporation,

                Defendant.
_____/

**PLAINTIFF'S BRIEF IN SUPPORT OF RESPONSE TO DEFENDANT'S MOTION TO DISMISS**

    Plaintiff, Lorinda A. Brown by and through the undersigned counsel, files her Brief in response to Defendant's Motion and Brief to Dismiss and in support thereof states:

**INTRODUCTION**

    This is an action by the Plaintiff, Lorinda Brown (hereinafter "Ms. Brown" or "Plaintiff"), for violations of the Americans with Disabilities Act (hereinafter "ADA"), at the Grandmother's Restaurant, (hereinafter "Grandmother's") located at and around 6944 "A" Street, Lincoln, Nebraska. The Complaint alleges many barriers to access at Grandmother's, which is a place of public accommodation[1], and due to these barriers, Ms. Brown was denied

---

[1] Public accommodations under Title III include: restaurants, hotels, doctor's offices, pharmacies, grocery stores, shopping centers, and other similar establishments. *See* 42 U.S.C. §12181(7).
   Title III of the ADA which relates to discrimination by public accommodation, provides generally that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a)

full, safe and equal access to the goods and services offered at Grandmother's in violation of the ADA.[2]

Subsequent to Ms. Brown filing her Complaint, the Court entered an Order on July 16, 2009 (Dkt. #22), initially staying the case and giving Defendant some time to conduct discovery regarding Ms. Brown's standing, and if necessary, filing a Motion to Dismiss the Case. Prior to the Court entering its aforementioned Order the parties scheduled a site inspection by Plaintiff's expert of the property. Upon the entry of the Court's Order, the Defendant refused to allow Ms. Brown's expert to go forward with the previously scheduled site inspection of Grandmother's, even though Ms. Brown's counsel and expert had already purchased airline tickets and secured hotel rooms. It was only after Ms. Brown filed a Motion for Clarification that the inspection was allowed to go forward by the Court (Dkt. #28).

Although Grandmother's claims on page 1 of its Brief that Ms. Brown filed her Complaint "[W]ithout warning or the courtesy of a demand letter", Defendant failed to point out to this Court what it already knows: that pre-notice is not required under Title III of the ADA prior to Ms. Brown filing a case against Grandmother's for alleged barriers to access, as will be discussed more fully below.

---

[2] Miss Brown takes offense to the Defendant's characterization on page 1 of its Motion Brief (hereinafter "Brief"), of her alleged barriers to access as being "trivial." She wonders how any barrier to access that affects people with disabilities can be considered trivial by the people who own Grandmother's and Grandmother's appears to infer that Ms. Brown brought her case in bad faith. See *Kitok v. Leslie's Poolmart Inc. et al.*, Case No.5:08-cv-00832-SGL-OP (C.D. Cal. 2009), Dkt. #42 filed September 4, 2009 at page 5; ( "Defendant's attempts to argue that this case was abusive or brought in bad faith also fail. These arguments are representative of a troubling trend in which disability access defendants attack the motives of plaintiffs and their counsel in nearly every case brought to enforce the right to equal access guaranteed by the ADA and California statutes."

In addition, although Grandmother's characterizes Ms. Brown in its Motion as a "tester" on page 1 of its Brief, this characterization and label actually allow Miss Brown to have standing to bring this case, as will be talked about more fully below.

Ms. Brown's ADA expert, architect Steve Mason (his Curriculum Vitae is attached as Exhibit "A), completed a survey of Grandmother's on August 7, 2009 and documented many alleged barriers to access (See Exhibit "B"). Subsequently, Ms. Brown's counsel forwarded Mr. Mason's survey report and an initial draft of a Stipulation for Settlement to Grandmother's counsel. Counsel for the parties then spent a lot of time discussing the alleged barriers to access and Steve Mason's recommendations for removing them, including many telephone conversations and email exchanges which also included the involvement of Ms. Brown's expert. Ultimately, despite appearing to work towards resolution of the case, Grandmother's and its counsel chose to forward an email to Plaintiff's counsel on a weekend, which required a response by Plaintiff's counsel and her expert, which was provided on Monday, November 2. Defendant and its counsel ignored the email, and filed its Motion to Dismiss on November 4. Ms. Brown notes this scenario because while Defendant appeared to work in good faith towards resolution of the case, Ms. Brown cannot understand why Defendant's counsel stopped communicating with her counsel regarding resolution of the case, and filed its Motion to Dismiss.[3]

The Defendant has filed a Motion to Dismiss alleging several issues as follows: (1) Ms. Brown does not have standing to assert her claims and therefore the Court lacks subject matter jurisdiction to hear the case; (2) Ms. Brown's claims regarding the alleged barriers to access are moot because Grandmother's has removed the barriers; 3) Barriers to access remain at

---

[3] Ms. Brown respectfully submits that she obviously realizes that Defendant had the right to file its Motion – it just appears to her to be ironic, given that her counsel was working diligently with defense counsel to resolve the case.

Grandmother's but Grandmother's claims that it is not readily achievable to remove the barriers, and therefore Grandmother's is not required to remove the barriers and Ms. Brown fails to state a claim upon which relief can be granted.

Ms. Brown respectfully submits that she has standing to bring her case, the Court has jurisdiction to hear her case, it is technically feasible and readily achievable to remove the remaining (three) barriers to access at Grandmother's, and like the Defendant's counsel who is being paid by Grandmother's for all of his billable hourly work on the case, Ms. Brown's counsel would like his reasonable attorney's and expert's fees and expenses for his work on the case.[4]

## MEMORANDUM OF LAW

**I.      The Legal Standards For A Motion To Dismiss.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a Complaint need only contain a "short plain statement of the claim."  The Complaint need only "give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests," to satisfy the notice pleading requirements of Rule 8(a)(2).  *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

A Complaint should not be dismissed for failure to state a claim upon which relief can be granted "unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 45-46.  Moreover, in addressing a Motion to Dismiss, "a court must accept all of the facts of the complaint as true, granting the motion only if it appears beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Miller v. Dep't of Agric. Farm Servs. Agency*, 143 F.3d 1413, 1414 (11th Cir. 1998); *Harper v. Blockbuster Entertainment Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998), *cert. denied*

---

[4] Ms Brown will not substantively address the fees and costs issue in her Response to Defendant's Motion to Dismiss as it is premature to bring this issue before the Court.

4

525 U.S. 1000 (1998)(quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); See Fed.R.Civ.P. 12(b)(6). The threshold of sufficiency that a Complaint must meet to survive a motion to dismiss is exceedingly low. *Ancata v. Prison Health Servs.*, 769 F.2d 700, 703 (11th Cir.1985).[5]

Further, to warrant dismissal of a Complaint pursuant to Fed. R. Civ. P. 12(b)(6), it must be "clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Blackston v. Alabama*, 30 F.3d 117, 120 (11th Cir. 1994), (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 1984).

## II.   THE ADA DOES NOT REQUIRE PRE-SUIT NOTICE AND THEREFORE PLAINTIFF WAS NOT REQUIRED TO "WARN" GRANDMOTHER'S OR FORWARD A "COURTESY LETTER" PRIOR TO FILING HER ADA CASE.

Title III of the ADA does not require pre-suit notice to a defendant as a condition precedent to instituting an action and many Courts have acknowledged this. *Association of Disabled Ams. v. Neptune Designs, Inc.*, 469 F.3d (11th Cir. 2006); *Fox v. RB Sitgo*, Case No. 05-80383-Civ-Hurley/Hopkins (S.D. Fla. 2005); *Fox v. G&D Eyecare Associates, Limited Partnership*, Case No. 04-80800-Civ-Cohn (S.D. Fla. 2005); *Disabled Patriots of America, Inc., et al. v. Vatland*, Case No. 03-14279-Civ-Middlebrooks (S.D. Fla. 2004); *Botosan v. Paul McNally Realty*, 216 F.3d 827, 832 (9th Cir. 2000); *Iverson v. Comsage, Inc.*, 132 F. Supp.2d 52(D. Mass. 2001); *Love v. Omni Netherland Plaza Hotel*, 2001 WL 1842450 (S.D. Ohio 2001); *Moyer v. Showboat Casino Hotel*, 56 F. Supp. 2d 498 (D. N.J. 1999); *Sharp v. Waterfront Restaurants*, 1999 WL 1095486 (S.D. Calif. 1999).

---

[5] See also *Franklin v. Murphy*, 745 F.2d 1221, 1228 (9th Cir. 1984), *quoted in In re Thomas*, 508 F.3d 1225, 1227 (9th Cir. 2007) (a frivolous complaint is one that recites "bare legal conclusions with no suggestion of supporting facts, or postulating events and circumstances of a wholly fanciful kind" or facts that conflict "with facts of which the district court may take judicial notice").

Consistent with the above, Grandmother's accusation that Ms. Brown did not give it warning prior to filing her ADA suit or forward Grandmother's a "courtesy letter" instead of filing her case, has no bearing whatsoever on Ms. Brown's standing or the Court's jurisdiction over this case.

### III. PLAINTIFF MS. BROWN HAS MADE ALLEGATIONS IN HER COMPLAINT AND THROUGH HER INERROGATORY RESPONSES THAT ARE SUFFICIENT TO GRANT HER STANDING TO BRING HER CASE AGAINST GRANDMOTHER'S.

Ms. Brown, suffered a concrete injury recognized by the ADA that is actual or imminent, because upon her visit to Grandmother's, all of the barriers alleged by her in her Complaint, subsequently identified in the report of her expert, and then discussed by Defendant in its Brief, constitute discrimination and a violation of Ms. Brown's civil rights. Ms. Brown has a right to patronize Grandmother's free from barriers to access that constitute discrimination against her. The discrimination occurred as soon as Ms. Brown encountered the first architectural barrier. According to her interrogatory response #2, of Defendant's second set of interrogatories, Ms. Brown initially encountered a ramp leading to the entrance that was too steep and was told by one of her companions, Randi McGrady-Kramer[6] that the Women's restroom has toilet stalls that are so narrow that women in wheelchairs cannot enter them or use them (see Plaintiff's

---

[6] That Ms. McGrady-Kramer does not use a wheelchair as indicated on page 3 of Defendant's Brief is completely irrelevant. Undersigned Plaintiff's counsel respectfully submits that it is his firm's responsibility under Fed.R.Civ.P. 11 to complete a due diligence pre-litigation investigation of a place of public accommodation, to confirm that barriers to access exist, prior to filing a case on behalf of Ms. Brown or other people with disabilities.

6

interrogatory responses attached as Exhibit "C"). Ms. Brown did not have to be subjected to every barrier to access at Grandmother's in order to bring her case.[7]

An alleged violation of the ADA is an injury sufficient to give rise to an Article III case or controversy. *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1334 (N.D. Cal. 1994). Title III of the ADA provides a private right of action to any person who is "being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination …" *42 U.S.C. sec. 112188(a)(1).* Plaintiff respectfully submits that based on the allegations in her Complaint[8], she has sufficiently alleged

---

[7] Defendant asserts on page 7 of its Brief that Ms. Brown should have been pushed up the steep, non-compliant ramp by one of her companions, for the purpose of going into the restaurant and attempting to dine, and alleges that Ms. Brown has no standing to pursue her case because she did not enter the restaurant. Ms. Brown asks the Court to consider why she should have been pushed up a ramp that is too steep to then go into a restaurant for the purpose of having a meal, when the restaurant has a Women's restroom with insufficient maneuvering clearance for women in wheelchairs, and contains toilet stalls that cannot be used by women in wheelchair?

In addition, in *Steger v. Franco, Inc.*, 228 F.3d 889 (8th Cir. 2000), the Court held a blind individual need not encounter all barriers that affect his disability to obtain effective relief. The effect of such a rule would lead to piecemeal compliance. "To compel a building's ADA compliance, numerous blind plaintiff, each injured by a different barrier, would have to seek injunctive relief as to the particular barrier encountered until all the barriers had been removed. This would not only be inefficient, but impractical." *Steger* at 894.

Further, to satisfy standing requirements to file suit, "'[a]ctual notice' of an intent not to comply with the ADA is sufficient." *Jankey v. Tentieth Century Fox Film Corp*, 14 F. Supp. 2d 1174, 1180 (C.D. Ca. 1998). In *Schonfeld v. City of Carlsbad,* 978 F. Supp. 1329, 1332 (S.D. Cal. 1997), the Court found that as to Article III standing, an ADA plaintiff alleging inadequate access to a facility is not required to have "'formally' requested to use the facility." *Id.*

[8] These allegations are as follows:

3. Plaintiff, LORINDA BROWN (sometimes referred to as "MS BROWN"), is a resident of the State of Nebraska and this judicial district. Plaintiff suffers from Spinal Muscular Atrophy which is a qualified disability as defined by the ADA and is substantially limited in performing one or more major life activities, including but not limited to walking, standing, grabbing, grasping and/or pinching. Plaintiff uses a wheelchair for mobility purposes. Prior to instituting the instant action, MS BROWN visited the Defendant's property, **Grandmother's Restaurant,** located at and around **6944 "A" Street, Lincoln, Nebraska** (hereinafter referred to as the "RESTAURANT" or "facility"), and was denied full, safe and equal access to the subject property of Defendant which is the subject of this lawsuit due to the barriers to access which

standing under Article III, including her assertion that she intends to return to Grandmother's again in the near future. In *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992), the Supreme Court held that to satisfy Article III's standing requirements, a plaintiff must show (1) she has suffered an "injury in fact" that is: (a) concrete and particularized; and (b) actual and imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged activity of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *Id.* A Plaintiff's desire to patronize Defendant's public accommodation free from discrimination is a cognizable interest for the purposes of standing. *Parr v. L&L Drive-Inn Rest.*, 96 F. Supp. 2d 1065, 1079 (D. Hawaii 2000), citations omitted.

The injury suffered by Ms. Brown is the discrimination to which she has been subjected because of the barriers to access that existed at Grandmother's when she went there and the discrimination that she will be subjected to in the future when she returns to Grandmother's so

---

exist and its lack of compliance with the ADA. *MS BROWN continues to desire and intends to visit the RESTAURANT but continues to be denied full and safe access due to the barriers to access that continue to exist.* Plaintiff's access to the public areas of the RESTAURANT and/or full and equal enjoyment of the goods, services, facilities, privileges, advantages and/or accommodations offered therein was denied and/or limited because of her disabilities, and continues to be denied and/or limited in the future unless and until Defendant is compelled to remove the physical barriers to access and ADA violations which exist at the RESTAURANT, including those set forth in this Complaint. (Italics added).
      4.    *Completely independent of her personal desire to have access to places of public accommodation free of illegal barriers to access, Plaintiff also acts as a "tester"…* (Italics added).
      16.    *Plaintiff continues to desire and intends to visit the RESTAURANT again in the near future* in order to utilize all of the goods, services, facilities, privileges, advantages and/or accommodations commonly offered at this RESTAURANT, but continues to be and will be unable to do so because of her disability due to the physical barriers to access, dangerous conditions and ADA violations that exist at the RESTAURANT that restrict and/or limit her access to the RESTAURANT and/or the goods, services, facilities, privileges, advantages and/or accommodations offered therein, including those barriers, conditions and ADA violations more specifically set forth in this Complaint. (italics added).

long as three (3) remaining barriers to access to be discussed below, continue to exist at the restaurant.

Furthermore, on page 7 of its Brief, the Defendant accuses Ms. Brown of being a "serial Plaintiff" because she filed seven (7) ADA cases and Defendant claims that this accusation constitutes an extensive litigation history that can undercut an intent to return to Grandmother's (citation omitted). Ms. Brown respectfully submits that filing seven (7) ADA cases for the purpose of asserting her civil rights does not make her a "serial Plaintiff" and that this Court knows that Plaintiff *Molski*[9], in California was eventually considered a serial ADA Plaintiff after he filed over 300 ADA cases!  Defendant's accusation is therefore without meaning and is only an attempt to cast a derogatory light on Ms. Brown before this Court.

In addition, on page 8 of its Brief, the Defendant asserts that because Ms. Brown lives 102 miles from the restaurant, "courts have held that distance "weighed against the likelihood of future harm." (citations omitted).  Ms. Brown respectfully asks the Court: does this therefore mean that when she travels all over the state of Nebraska for her son's baseball games[10] that she cannot assert a violation of her civil rights at any restaurant because it may be some miles away

---

[9] *Molski v. Mandarin Touch Restaurant*, 347 F. Supp.2d 860 (C.D. Cal. 2004) (finding plaintiff's multiple suits were filed in bad faith), *aff'd in part sub.nom Molski v. Evergreen Dynasty Corp.*, 500 F.3d 1047 (9th Cir. 2007).  See also, See *Kitok v. Leslie's Poolmart Inc. et al.*, Case No.5:08-cv-00832-SGL-OP (C.D. Cal. 2009), Dkt. #42 filed September 4, 2009 at page 7 ("The persistence of plaintiffs in bringing multiple lawsuits alleging unequal access to places of public accommodation does not demonstrate wrongdoing by plaintiffs anymore than it shows a hesitation of businesses to comply with the law.  As the Ninth Circuit has noted in the context of ADA litigation", "For the ADA to yield its promise of equal access for the disabled, it may indeed be necessary and desirable for committed individuals to bring serial litigation advancing the time when public accommodations will be compliant with the ADA." *Evergreen Dynasty Corp.*, 500 F.3d 1047, 1062 (9th Cir. 2007) (panel op.), citing Samuel R. Bagenstos, The Perversity of Limited Civil Rights Remedies: The Case of 'Abusive' ADA Litigation, 54 U.C.L.A. L. Rev. 1, 5 (2006).

[10] See Ms. Brown's response to Defendant's interrogatory #3 of its second set of interrogatories (Exhibit "C").

from her home in Grand Island, Nebraska? Defendant's assertion played out in real life would mean that Ms. Brown would never be able to assert standing to bring any ADA case, for any barriers to access at any restaurant that is 100 or so miles away from Grand Island, even though she was traveling in the particular area for her son's baseball games! Plaintiff respectfully submits that such is not the intent of the ADA.

The glaring flaw in Defendant's argument is that if the facility was accessible at the time of Ms. Brown's visit there would have been no need for this lawsuit. If the ADA required an individual with a disability to actually go into an inaccessible facility or use an accommodation, that was unusable to the disabled person before there was standing to bring a claim under Title III, then the Act would have no private enforceability. Furthermore, "civil rights law depends heavily on private enforcement …Attempts to weaken the remedies available under the ADA are attacks on the ADA itself and their success would make the ADA an empty promise of equality." *Committee Print, Vol. II, 101st Congress, 2d Sess., at 1481-82 (1990).* Congress envisioned "clear, strong, consistent, enforceable standards" to address discrimination against individuals with disabilities. 41 U.S.C. §12101(b)(2). Parr v. L & L Drive-In Restaurant, 96 F. Supp. 2d 1065, 1079 (D. Hawaii 2000). Denying Plaintiff standing in this instance would render the enforcement provisions and standards of the ADA illusory and ineffective.

### IV. PLAINTIFF ALSO HAS STANDING AS A TESTER TO BRING HER CASE AGAINST GRANDMOTHER'S UNDER TITLE III OF THE ADA

In addition, and independent of her visit to Grandmother's for personal reasons, Ms. Brown also acted as a "tester" during her visit, to determine whether the Defendant was violating the ADA and the extent thereof. Ms. Brown's intent to visit Grandmother's to eat, and also as a "tester," to verify Defendants' non-compliance with and violations of the ADA, confers standing. See Complaint¶ 4. See also *Tandy, et al. v. City of Wichita*, 380 F.3d 1277, 1285 (10th

10

Cir. 2004)(Finding "testers" have standing under the ADA; also finding that a plaintiff's averments to use a public accommodation several times per year - even without identifying specific dates - is not "speculative" and is sufficient to confer standing); *Shaver v. Independent Store Co.*, 350 F.3d 716, 723-25 (8th Cir. 2003)(Testers have standing to maintain ADA claims; and, the fact that plaintiff "manufactured" his claims and the conduct of aggrieved party is irrelevant in evaluating tester standing); *Molski v. Price*, 224 F.R.D. 479 (C.D.Cal. 2004)(Plaintiff who had filed 240 other ADA lawsuits had standing to sue a gas station where he testified he intended to return to the subject station as a tester and to use the restroom if it was accessible had standing; also held that plaintiff's motivation for visiting the property (i.e. for purposes of the lawsuit) was irrelevant - only his intent was relevant); *Clark v. McDonald's Corporation*, 213 F.R.D. 198 (D.N.J. 2003)(Where paraplegic's purpose in visiting the restaurant was to test its compliance with the ADA, and to avail himself of the goods and services, he had standing; dual motivation sufficed to make the plaintiff a "bona fide patron."); *Disability Advocates and Counseling Group, Inc. and Steven Brother vs. 4SK, Inc.*, Case No. 6:04-cv-327-Orl-31JGG, Doc. #49, p. 17, (M.D. Fla., April 6, 2005), Order denying motion for summary judgment (holding that Title III ADA plaintiff had standing as a "tester" to maintain action, regardless of whether his visit to the facility was motivated merely by a desire to ensure standing for purposes of a lawsuit); and the Court, in *Bruni v. Fine Furniture by Gordon's Inc., et al.*, Case No. 2:06-cv-456-FtM-DNF, Doc. #20, page 7 (M.D. Fla., January 3, 2007), Order recognized "that Plaintiff has sufficiently plead standing as a "tester" and therefore, the motion to dismiss will be denied as to plaintiff in his capacity as a "tester."

Thus, because Ms. Brown has, and had, specific intent to return to Defendant's premises, both as a patron and as a "tester" to verify Defendant's ADA non-compliance or compliance, she has standing to maintain her case.

V. **MS. BROWN HAS STANDING TO PURSUE ANY CLAIMS REGARDING GRANDMOTHER'S BECAUSE SHE HAS ESTABLISHED A REAL OR IMMEDIATE THREAT OF HARM**

Ms. Brown suffered a concrete injury recognized by the ADA that is actual or imminent, because, first she encountered barriers to access during her aforementioned visit to the restaurant and second, any remaining, related barriers constitute discrimination. The Defendant seeks the Court's dismissal of Ms. Brown's claims against Grandmother's because Grandmother's claims on pages 10 – 17 of its Brief that fifteen (15) barriers have been removed and are not likely to recur. As Ms. Brown indicates *supra*, her counsel and defense counsel spent a lot of time discussing and working through the barrier to access issues identified in Ms. Brown's Complaint and the report of her expert and Ms. Brown agrees that since she filed her case, Grandmother's has addressed many barriers to access.[11]

Grandmother's, however, asserts on pages 17 – 20 of its Brief that it is not readily achievable to remove the remaining three (3) barriers that exist at the restaurant, therefore Grandmother's believes that there is no real or immediate threat of harm to Ms. Brown, and wants the Court to ultimately conclude that Ms. Brown has failed to state a claim upon which relief can be granted.

---

[11] Ms. Brown respectfully submits though that while she is obviously pleased that Grandmother's address barriers to access *after* Ms. Brown filed her Complaint and her expert surveyed the subject restaurant, this fact obviously does not lessen the legitimacy of her case being filed in the first place, as her case is the reason that Grandmother's addressed barriers to access in its restaurant.

Ms. Brown and her expert could not disagree more with Defendant's aforementioned assertions and respectfully submit that the recommended modifications of Steve Mason to address the three (3) remaining barriers are both readily achievable and technically feasible to accomplish. First, however, Plaintiff must clarify for the Court what specific three (3) barriers need to be addressed. The Defendant identifies the remaining barriers as: 1) the slopes of the exterior ramp that are too steep; 2) the size of the Women's restroom that is too small; and 3) the non-existence of an accessible stall in the Women's restroom.

Actually, the parties have reached an agreement regarding the exterior ramp leading up to the restaurant entrance and the Defendant indicates on page 13 of its Brief that subsequent to Ms. Brown filing her case, the Defendant implemented an alternative modification to address the ramp barrier issue and Plaintiff in good faith accepts this alternative modification. Regarding the second barrier to access, that the Women's restroom is too small, this barrier issue is alleged in paragraph 18 (vii) and 18(x) of Ms. Brown's Complaint as follows:

18(vii).:   There is insufficient maneuvering clearance at the entry/exit door;

18 (x).:   There is insufficient maneuvering clearance in the toilet room;

For the purpose of removing barrier to access 18(vii), Ms. Brown's expert recommended that Grandmother's relocate the baby changing table that currently causes insufficient, non-compliant clear floor space at the latch side of the door for the purpose of exiting the Women's toilet room (see Exhibit B – page 8 of report of Plaintiff's expert). On page 14 of its Brief, Grandmother's refuses to complete this modification, simply saying that additional clearance on the latch side of the door is not necessary and not discussing the baby changing table. Relocating the baby changing table to provide additional maneuvering clearance at the Women's restroom

13

door for the purpose of a woman in a wheelchair exiting the restroom is a basic, necessary, straightforward, inexpensive modification that is both readily achievable and technically feasible to accomplish (see Affidavit of Plaintiff's expert Steve Mason attached as Exhibit "D").

In an effort to address Ms. Brown's barrier allegation 18(x) in her Complaint, that there is insufficient maneuvering clearance in the Women's toilet room, Ms. Brown's expert made two (2) recommendations in his report: a) he recommended removing the shelf beneath the mirror on the wall in the restroom, to provide a 49 ½ inch approach to that toilet stall designated as "accessible"[12] in compliance with §4.13.6 and Figure 25(d) of Appendix A to 28 CFR Part 36, July 1, 1994 Edition (hereinafter referred to as the "ADAAG")[13]; and b) he recommended that

---

[12] The toilet stall designated as "accessible" is actually not accessible at all for women in wheelchairs. It is only 37 ¾ inches wide, a wheelchair cannot enter it and it is essentially useless for women in wheelchairs (see page 9 of report of Plaintiff's expert).

[13] To implement the ADA, Congress charged the Attorney General with issuing specific standards for complying with Title III of the ADA. 42 U.S.C. § 12186(b). In accordance with that mandate, with respect to Title III of the ADA, the Department of Justice adopted stadndards regarding public accommodations, which are known as the ADA Accessibility Guidelines for Buildings and Facilities ("ADAAG"). The ADAAG, which are codified in 28 C.F.R. Part, 36, App. A constitute legally binding regulation." *Independent Living Resources v. Oregon Arena Corp.*, 1 F.Supp.2d 1124, 1130 n. 2 (1998).

The purpose of the ADAAG standards is to set forth "guidelines for accessibility and commercial facilities by individuals with disabilities. {The] guidelines are to be applied during the design, construction, and alternation of such buildings and facilities to the extent required by regulations issues by Federal agencies, including the Department of Justice, under the Americans with Disabilities Act of 1990." The statutory scheme of the ADA contemplates that the courts would defer to the DOJ's reasonable interpretation of its regulations. *Paralyzed Veterans of America et al. v D.C. Arena L.P. et al.*, 117 F.3d 579, 586 (D.C. Cir. 1997).

In addition, while the ADAAG sets out construction requirements for new or altered buildings, it also provides "valuable guidance for determining when existing facilities contain architectural barriers to access. *Access Now*, 161 F.Supp.2d at 1368 (*quoting Pasuitti v. New York Yankees*, 87 F.Supp.2d 221, 226 (S.D.N.Y. 1999); *Pickern*, 2002 WL 202442 at *2. In fact, the implementing regulations promulgated by D.O.J. treat any element in an existing facility, that do not meet or exceed the ADAAG standards, as a barrier to access. *Parr*, 96 F.Supp.2d at 1086; *See also* 28 C.F.R. §§ 36.304(d), 36.402(b)(2) (measures taken to comply with barrier removal requirements … shall comply with the applicable requirements for alterations," which are set forth in the ADAAG); U.S. Department of Justice, Supplemental Commentary to the Final Regulations, 56 Fed.Reg. 34, 544 (1991)("Section 36.304(d) requires that measures to be taken

the door to the "accessible" stall that currently provides a clear opening width of 29 ½ inches, be replaced with a door that has a clear opening width of at least 32 inches in compliance with §4.13.5 and Figure 24 of the ADAAG.

Defendant did not discuss these specific problems on page 15 of its Brief, instead claiming that it would have to make "serious" structural changes to the Women's restroom, that goes to the level of remodeling it and causing the removal of available seating and selling space in Grandmother's. Removing the shelf beneath the mirror in the restroom and widening the door to the "accessible" stall" do not require the Defendant to make major structural changes, and are technically feasible and readily achievable to accomplish (See Affidavit of Plaintiff's expert – Exhibit "D").

Regarding the third barrier to access, the non-existence of an accessible stall in the Women's toilet room, the Plaintiff is not clear why the Defendant discusses at length on pages 14-15 and 19-20 of its Brief, why it is not readily achievable to provide an accessible stall and also files the Affidavit of Plumber Siemsen in support of its assertion. Counsel for the parties have already discussed this issue, defense counsel has provided documentation to Plaintiff's counsel indicating that Lincoln building officials will not allow a fixture reduction for the purpose of providing an accessible stall, and Plaintiff's expert has acknowledged and discussed the fixture reduction issue on page 9 of his report (Exhibit "B").[14]

---

to remove barriers under §36.304  be subject to [the] requirements for alterations … It only permits deviations from [those] requirements when compliance with [them] is not readily achievable…."); *Pickern*, 2002 WL 202442 at *2.

[14] In addition, Plaintiff's expert provided an alternative recommendation for providing an accessible toilet stall: he suggested that Defendant create a new single-user unisex accessible restroom in Grandmother's (see Exhibit "B"). This included a conceptual sketch of the proposed restroom. Defendant responded by saying the sketch did not take a specific issue into account (Plaintiff will not discuss the issue because it constitutes settlement discussions), whereupon Mr. Mason completed another conceptual sketch of the restroom for the purpose of addressing the

15

An alleged violation of the ADA is an injury sufficient to give rise to an Article III case or controversy. *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1334 (N.D. Cal. 1994). Miss Brown's desire to patronize Defendant's Grandmother's restaurant, a place public accommodation, free from discrimination[15] is a cognizable interest for the purposes of Miss Brown's standing in this case. *Parr v. L&L Drive-Inn Restaurant*, 96 F. Supp. 2d 1065, 1079 (D. Hawaii 2000) (Citations omitted). Plaintiffs seeking injunctive relief based on past discrimination are denied standing when that past discrimination is unlikely to be repeated. *See Hoepfl v. Barlow*, 906 F. Supp. 317, 323 (E.D. Va. 1995); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1334 (N.D. Cal. 1994). Title III, however, provides a private right of action to any person who is "being subjected to discrimination on the basis of disability" or who has "reasonable grounds for believing that such person is about to be subjected to discrimination…." *42 U.S.C. sec. 112188(a)(1)*. In *Parr*, the court was looking at the likelihood of Plaintiff sustaining similar discrimination in the future.[16] The court's reasoning, which took into account

---

Defendant's concern. The Defendant, however, responded with additional specific reasons why it could not provide a single user unisex accessible restroom. Given that Grandmother's is not considered new construction under the ADA, Plaintiff is not asking this Court to require Defendant to build a new single user unisex accessible restroom, however, consistent with the above and given that the parties, their counsel and Plaintiff's expert understand also that a fixture reduction will not be allowed by building officials for the purpose of providing an accessible stall in the existing Women's restroom, Ms. Brown respectfully submits that this fact diminishes Defendant's claim that it cannot: relocate the baby changing table; b) cut back or remove the shelf beneath the mirror in the Women's restroom; and c) widen the stall door on the non-accessible toilet stall that is designated as accessible, all for the purpose of at least providing some additional door clearance and maneuvering clearance in the Women's restroom for women in wheelchairs who want to make an attempt to use the Women's restroom, wheel to the door of the non-accessible stall that is designated as accessible and somehow try to access the toilet in the non-accessible stall.

[15] Discrimination includes the failure to remove "architectural barriers" in existing facilities where such removal is "readily achievable." 42 U.S.C. §12182(b)(2)(A)(v).

[16] The *Parr* decision also did recognize the Plaintiff's standing to complain about barriers he did not actually encounter. The *Parr* court, after evaluating the *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) decision, held that a mobility restricted Plaintiff had standing to seek injunctive

16

that the facility in question was a fast food restaurant, demonstrates that the circumstances and nature of the facility should change the amount of evidence that the Plaintiff will be able to produce to show her intent to return. In Ms. Brown's case, the restaurant is in a geographical area where her son plays baseball games, Ms. Brown has knowledge that the Women's restroom has insufficient maneuvering clearance for women in wheelchairs, has no accessible stall, and Ms. Brown will be prevented from even attempting to try to use the restroom if the 3 barriers to access, *supra* are not removed. These facts clearly demonstrate that Ms. Brown has a real, immediate and future threat of harm should she return to the restaurant with these 3 barriers to access continuing to exist and consistent with the above and the report and affidavit of Steve Mason, Ms. Brown respectfully submits that she has standing and the Court can conclude that it is technically feasible and readily achievable to remove the 3 barriers and require the Defendant to remove them.[17]

### VI.   THE CONCLUSION OF MS. BROWN'S RESPONSE TO DEFENDANT'S MOTION

---

relief under the ADA with respect to architectural barriers he encountered at a fast food chain restaurant, and with respect to barriers he did *not* encounter existing in other restaurants in the chain. In its rational, the *Parr* court discusses the broad language of the ADA and how that broad language affects a plaintiff's standing requirements to bring a claim under Title III. "The broad language of the [ADA] statute expands the definition of what constitutes an injury and appears to allow for broad injunctive relief." *Id.* at 1081, citation omitted.

[17] The Court found in *Parr* that the Plaintiff had standing to sue for injunctive relief for barriers not initially encountered. "When Plaintiff allegedly encountered architectural barriers at L & L, discrimination occurred as to all the related barriers within this public accommodation." *Parr* at 1082. In addition, 28 C.F.R. Part 36, § 36.501 states that "nothing in this section shall require an individual with a disability to engage in a futile gesture if the person has actual notice that a person or organization covered by Title III of the Act or this part does not intend to comply with its provisions. "Because Plaintiff is not required to engage in a "futile gesture," Plaintiff should be allowed to sue for the violations he did not encounter." *Parr* at 1082, See also, 42 U.S.C. §12188(a)(1).

The Defendant claims that Plaintiff was not denied full and equal treatment because of her disability and submits that she has no claim under the ADA. Defendant admits that it undertook measures to address barriers to access at Grandmother's subsequent to the Ms. Brown filing her case. While this is true, unfortunately some barriers to access still exist at Grandmothers and these barriers are technically feasible to remove and can be removed without much difficulty and expense, i.e., are readily achievable to remove.  Ms. Brown's case therefore is not moot and must continue.  The Supreme Court in *United States v. W.T. Grant Co.*, 345 U.S. 629 (1953), noted when discussing the effect of voluntary cessation of an illegal activity by the Defendant, that the necessary determination is whether there exists some cognizable danger of recurrent violation.  In our present case, the three remaining barriers to access at Grandmother's constitute the continuing violation of the ADA.  The test for mootness is a stringent one.  *United States v. Concentrate Phosphate Export Association, Inc.*, 393 U.S. 199 (1968).  Mere voluntary cessation of alleged illegal conduct does not moot a case; if it did, the Courts would be compelled to leave 'the defendant *** free to return to his old ways (*quoting W.T. Grant*).  While the Defendant has addressed some of its "old ways", i.e., barriers to access, it must address and correct the remaining three barriers to access at Grandmother's.

As shown by the report and affidavit of Plaintiff's expert, these barriers can be addressed by the Defendant. By asking the Court to dismiss Ms. Brown's Complaint, the Defendant is asking the Court to ignore its authority to decide whether the Defendant continues to violate the ADA. This does not obviously assure the Ms. Brown and other women in wheelchairs will no longer be discriminated against at Grandmother's as this concerns the Women's restroom.

On or about July 26, 1990, Congress enacted the ADA, 42 U.S.C. § 12101 et seq. Commercial enterprises were provided one and a half years from enactment of the statute to

18

implement its requirements. That phase-in period ended January 26, 1992. 42 U.S.C. § 12181; 20 C.F.R. § 36.508(a). To date, Grandmother's has still not made all of the required modifications in order to make its restaurant compliant with the ADA. The restaurant, which qualifies as a public accommodation pursuant to 42 U.S.C. § 12181(7) and 28 C.F.R. § 36.104, continue to discriminate against Plaintiff, and others who are similarly situated, by: (1) denying access to, and full and equal enjoyment of goods, services, facilities, privileges, advantages and/or accommodations in derogation of 42 U.S.C. § 12182 *et seq*.: and by (2) failing to remove certain architectural barriers at the restaurant as required by 42 U.S.C. § 12182(b)(2)(A)(iv).

As illustrated above, Ms. Brown has standing to pursue her claims, her claims are not moot and this Court has the jurisdiction to hear and address her claims and grant injunctive relief for the Defendant to complete its compliance with the ADA for past and current violations of the ADA and Ms. Brown's civil rights. [18]

WHEREFORE, consistent with the foregoing, Plaintiff respectfully requests that this Court Deny the Defendant's Motion to Dismiss and grant the Plaintiff injunctive relief by entering an Order requiring the Defendant to remove the three barriers discussed above so that its subject restaurant is accessible to and useable by people with disabilities and for any other relief that this Court deems just and proper.

Dated this 23rd day of November 2009        Respectfully submitted,


                                            Schwartz Zweben LLP
                                            3876 Sheridan Street

---

[18] In a private action under Title III of the ADA, such as Ms. Brown's case, a court may provide to "any person who is being subjected to discrimination on the basis of disability in violation of this title or who has reasonable grounds for believing that such person is about to be subject to discrimination in violation of section 303 [42 USCS § 12183]," injunctive relief which <u>shall</u> include an order to alter facilities "to make such facilities readily accessible to and useable by individuals with disabilities to the extent required by this title." 42 U.S.C. §12188(a)(1) and (2).

19

        Hollywood, Florida 33021
        Telephone:   954-966-2483
        Fax:           954-966-2566

By: Stephan M. Nitz
     Stephan M. Nitz
     Florida Bar No. 0045561
     snitz@szalaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 23, 2009, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing which sent notification of such filing to the following:

   Marvin L. Andersen
   Michael P. Kneale
   Bradley, Elsbernd, Emerton, Andersen & Kneale, P.C.
   202 W. Third Street
   P.O. Box 639
   Grand Island, NE  68802-0639
   (308) 382-2128
   (308) 382-2014

   Harvey B. Cooper
   Cline Williams
   8712 West Dodge Rd.
   Suite # 300
   Omaha, NE  68114
   (402) 392-1250

                By: Stephan M. Nitz
                    Stephan M. Nitz